DAVID T. MALOOF (DM 3350)
THOMAS M. EAGAN (TE 1713)
MALOOF BROWNE & EAGAN LLC
411 Theodore Fremd Avenue, Suite 190
Rye, New York 10580-1411
(914) 921-1200
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SOMPO JAPAN INSURANCE COMPANY OF        :        **ECF CASE**
AMERICA,
                                        :
                    *Plaintiff,*                 **07 Civ. 4053 (DAB)**
     - against -                        :

NIERODA TRANSPORT, INC.                 :

                    *Defendant.*        :

                                        :
------------------------------------x

### PLAINTIFF'S MEMORANDUM OF LAW
### IN SUPPORT OF DEFAULT JUDGMENT

#### PRELIMINARY STATEMENT

The Plaintiff Sompo Japan Insurance Company of America (hereinafter "Sompo" or "Plaintiff") moves for Default Judgment against Defendant Nieroda Transport, Inc. (hereinafter "Nieroda" or "Defendant") for Defendant's failure to answer or otherwise plead or appear in this action. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1337(a), 28 U.S.C. § 1331, 49 U.S.C. § 14706 and 28 U.S.C. § 1367. The Defendant has been served with notice of this motion both by personal service and U.S. mail.

## ARGUMENT

### I.

### SOMPO IS ENTITLED TO DEFAULT JUDGMENT AGAINST DEFENDANT NIERODA

Rules 55(a) and (b) of the Federal Rules of Civil Procedure provide that upon the failure of a defendant "to plead or otherwise defend" a civil action, the plaintiff may obtain a default judgment once the clerk has noted a defendant's default.

The uncontroverted facts in this case establish that the Summons and Complaint filed in this action were personally served upon an authorized representative of Defendant Nieroda at its place of business in Windsor, Connecticut on May 30, 2007. Decl. at ¶5, Exhibit 3. In response, this Defendant has not pled, moved or otherwise appeared in this action. Accordingly, and in response to Plaintiff's request, the Clerk has noted the Default of said Defendant. Decl. at ¶ 7, Exhibit 5. These facts entitle Plaintiff to a Judgment of Default against Defendant Nieroda.

### II.

### THE PLAINTIFF'S DAMAGES ARE LIQUIDATED AND MAY BE ENTERED BY THE CLERK

F.R.C.P. Rule 55(b) permits the clerk to enter a Default Judgment in cases where a plaintiff's claim is "for a sum certain or for a sum which can by computation be made certain." The quantity and value of the damaged Canon photocopy machine that is the subject of the claim in this action was identified and calculated by invoice in the amount of $50,000.00.[1] Exhibit 7. Therefore, the calculation of the loss and Plaintiff's judgment demand are based upon the invoice value, which has been recognized as an

---

[1] Plaintiff paid its assured $47,500.00 in accordance with the terms of the contract of insurance. Exhibit 8 (Subrogation Receipt).

appropriate measure of damages. *Tatlow & Pledger (PTY) Ltd. v. Hermann Forwarding Co.*, 456 F. Supp. 351 (S.D.N.Y. 1978); *Sony Magnetic Products, Inc. v. Merivienti O/Y*, 668 F. Supp. 1505 (S.D. Ala. 1987). Finally, prejudgment interest of nine percent has recently been recognized in this District. *Nipponkoa Insurance Co. Ltd. v. Watkins Motor Lines, Inc.*, 2006 WL 1359921 (S.D.N.Y.); *Sompo Japan Insurance of America v. Union Pacific Railroad Company*, No. 02 Civ. 9523 (S.D.N.Y. 2007) (Batts, J.) (copy attached).

## CONCLUSION

Defendant Nieroda is in Default entitling Plaintiff to Judgment in the amount of $47,500.00 plus prejudgment interest from March 14, 2005 (date of delivery), plus costs.

Dated: Rye, New York
October 19, 2007

MALOOF BROWNE & EAGAN LLC

By: _____
David T. Maloof (DM 3350)
Thomas M. Eagan (TE 1713)
411 Theodore Fremd Ave., Suite 190
Rye, New York 10580
Tel: (914) 921-1200
Fax: (914) 921-1023
Email: dmaloof@maloofandbrowne.com
          teagan@maloofandbrowne.com

*Attorneys for Plaintiff Sompo Japan Insurance Company of America*

\\SERVER1\Company\WP-DOCS\1306.09\072506 Memo in Support of Default.doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
SOMPO JAPAN INSURANCE OF AMERICA,

        Plaintiff,

-against-

UNION PACIFIC RAILROAD COMPANY,

        Defendant.
---------------------------------------X



ORDER
02 Civ. 9523 (DAB)

DEBORAH A. BATTS, United States District Judge.

Sompo Japan Insurance Company of America ("Sompo") and Olympus America, Inc. ("Olympus") (collectively, "Plaintiffs") bring this action against Union Pacific Railroad Company ("UP" or "Defendant"), seeking damages for a stolen shipment of digital cameras.

Pending before the Court is Plaintiffs' Motion for Summary Judgment regarding the limitation of damages in this action. For the reasons that follow, Summary Judgment is GRANTED in favor of Plaintiffs.

I. Background

A. Procedural History

On November 21, 2005, this Court granted Defendant's Motion for Partial Summary Judgment, in favor of Defendant. In that ruling, the Court found a contractual extension of the United States Carriage of Goods by Sea Act (COGSA), and limited UP's

liability to $500.00 per package. This decision was vacated on December 15, 2006, in light of the Second Circuit's ruling in Sompo Japan v. Union Pacific R.R., 456 F.3d 54 (2d Cir. 2006) (hereinafter, "Sompo II"); the Second Circuit held that the Carmack Amendment and the Staggers Act should be applied to the domestic rail portion of a continuous intermodal shipment originating in a foreign country, and that an ocean carrier could not trump Carmack requirements by contractually extending COGSA's terms to a domestic rail subcontractor. Given the undecided Summary Judgment Motion before the Court, the Court's December 15, 2006 Order also referred the matter to Magistrate Judge for a damages inquest.

On January 16, 2007, this Court received a letter request from Defendant, asking the Court to stay action in this case pending the outcome of another matter granted cert by the United States Supreme Court, Altadis USA, Inc. v. Sea Star Line, et al., 458 F.3d 1288 (11th Cir. 2006). By letter dated January 19, 2007, Plaintiffs objected to a stay in this case. On January 24, 2007, this Court found that a Supreme Court ruling in Altadis might have an impact on the instant case. Accordingly, the Court issued an Order that stayed all action in this case, including an ongoing damages inquest, pending the outcome of a Supreme Court ruling in Altadis.

2

On February 13, 2007 this Court received correspondence from Plaintiff, informing the Court that <u>Altadis</u> settled, and the petition in the Supreme Court withdrawn. Plaintiff requested that the stay be lifted and that the matter be set down to complete the damages inquest. The Court granted Plaintiff's request, entering a referral to Magistrate Judge Dolinger for a damages inquest on February 22, 2007.

On March 9, 2007, Plaintiff Sompo wrote to the Court, asking that the Court So Order the Parties' Stipulation on Damages, and asking that the Court grant Summary Judgment in favor of the Plaintiff for the stipulated amount, plus prejudgment interest. The letter enclosed a Proposed Order on behalf of Plaintiff. On March 13, 2007, the Court entered an Order of Stipulation on Damages, under which the parties agreed that the value of the lost/damaged cargo was $422,246.02.[1]

By letter dated March 22, 2007, Defendant UP objected to entry of the Proposed Order, arguing that it went well beyond the scope of this Court's December 15, 2006 Order of vacatur, which made no new findings of fact or law other than determining that the Second Circuit decision in <u>Sompo II</u> was controlling in this

---

[1] Contrary to Defendant's suggestion, this Order did not include language indicating that "the only thing remaining [in this case is] for the Clerk to enter judgment for this amount plus interest." (Def. Letter of August 15, 2007).

3

action. Instead, Defendant asks the Court to enter merely a Judgement against it, in the amount of stipulated damages, without setting forth any reasoning or findings. (See e.g. Def. Letters of March 22, 2007 and March 26, 2007).

On July 30, 2007, Plaintiff again wrote to the Court, enclosing a copy of the District Court's summary judgment ruling on remand from Sompo II. In that decision, Judge McMahon found that, on facts quite similar to those at issue in this action, that UP did not have a limit of liability for damage occurring during the rail portion of an international shipment under an intermodal bill of lading. Sompo Japan Insurance Company v. Union Pacific Railroad Company, 2007 WL 2230091 (S.D.N.Y. 2007). Plaintiff suggests that the Court adopt Judge McMahon's reasoning and enter summary judgment in Plaintiff's favor. (Pl. Letter of July 30, 2007).

In response, by letter dated August 15, 2007, Defendant UP objects to Plaintiff's suggestion. Curiously, Defendant does not contest Sompo's suggestion that summary judgment should be entered in Plaintiff's favor; however, Defendant does object to the Court adopting Judge McMahon's reasoning. Although the parties and exempt rail circulars in this case and in the case before Judge McMahon were identical, Defendant argues that the

4

cases are factually distinct because they involve different ocean carriers, different bills of lading, electronic waybills and exempt transport agreements. (Def. Letter of August 15, 2007). In a reply dated August 16, 2007, Plaintiff Sompo reiterates that the factual distinctions highlighted by Defendant are not material, and that, in this case, there can be no limitation on liability.

B.  Factual Background

The undisputed material facts in this action were thoroughly detailed in this Court's original Order of Summary Judgment. (Order of November 21, 2007, at 1-4). The Court presumes the Parties' familiarity with these facts. Here the Court only summarily reviews the facts most relevant to the instant action.

All portions of the carriage of digital cameras at issue in this action were part of an international shipment. (Complaint ¶ 8). This shipment originated in Tokyo, Japan. (Def.'s Rule 56.1 Stmt ¶ 2). The cargo was discharged from the M/V Hudson Bridge ship in Tacoma, Washington for interstate transport by UP rail delivery to Woodbury, New York. (Def.'s Rule 56.1 Stmt ¶¶ 1-2; Pls.' Response to Def.'s Rule 56.1 Stmt ¶¶ 1-2). The shipment traveled under a through bill of lading ("B/L"). (Order of November 21, 2007, at n.1 and n.2). This through B/L extended

5

liability provisions of the United States Carriage of Goods by Sea Act (COGSA), stating that if COGSA applies, the carrier shall be liable for up to $500.00 per package, "unless the nature and value of such Goods have been declared by the shipper before receipt of Goods by Carrier and inserted into this Bill of Lading." (Sheldon Aff. Ex. A).

The inland rail transport was further governed by two additional documents; an Exempt Rail Transport Agreement that UP entered into with K-Line and Rail Bridge Corporation, and an EDI waybill which UP issued to Rail Bridge. (Def.'s Rule 56.1 Stmt ¶¶ 10-11). The Exempt Rail Transport Agreement states, in pertinent part, "Liability for freight loss and damage to lading while under the control of UP shall be governed by applicable rules circulars." (Sheldon Aff. ¶ 15). The EDI waybill does not cite the rules circulars, and it miscites the Exempt Rail Transport Agreement contract number. (Sheldon Aff. Ex. C).

According to Defendant, the applicable Rules Circular for this shipment is UP Exempt Circular 20-B, which limits liability for damages to $500.00 per package, pursuant to COGSA, 46 U.S.C. § 1304(5). (Sheldon Aff. ¶¶ 16-17). Also, according to Defendant, Item 143-B of the Rules Circular offers full value Carmack liability by explaining:

6

> 49 U.S.C. Section 11706 [the Carmack Amendment] provides for full value and other liability terms for the carrier and the shipper. To make a shipment pursuant to the terms of 49 U.S.C. Section 11706, the 7, [sic] must comply with the following provisions...

(Sheldon Aff. ¶ 22 and Ex. F). Plaintiffs do not dispute the accuracy of the Item 143-B writing. However, Plaintiffs allege that Olympus America was never presented with Circular 20-B and its option of declaring Carmack liability. (Pls.' Response to Def.'s Rule 56.1 Stmt ¶ 20). While Item 143-B explains the requirements for making a shipment pursuant to Carmack, Item 142-B(1) sets out the "General Application" for Cargo Loss and Damage Provisions. (Sheldon Aff. Ex. E). The only term among these provisions which informs shippers of their option to choose liability under Carmack is Item 142-B(1)(C). Id. That term reads, in relevant part: "On domestic moves that originate in the United States, Shippers may, at their option, select the liability provisions set forth in 49 U.S.C. Section 11706 (Carmack) as explained in Item 143." Id.

II. DISCUSSION

A. The Summary Judgment Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave.,

7

Inc., 219 F.3d 104, 107 (2d Cir. 2000). Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). While a court must always "resolv[e] ambiguities and draw[ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P.

8

56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id.

B. Carmack Liability

At the outset, the Court notes that it is true, as Defendant observes in its March 22, 2007 letter to the Court, that the Court made no specific findings in its Order of vacatur. However, it is not true that the Court has not made findings of fact or law in the long history of this case. The Court's original ruling on summary judgment necessarily made numerous findings, and only one of these, that the Carmack Amendment and Staggers Act requirements were inapplicable to this case, was overruled by the Second Circuit. Among the other determinations that the Court made in this case, the Court found, as the parties largely conceded, that the cargo at issue in this case was burglarized during the domestic rail portion of an international shipment traveling under a through bill of lading that extended COGSA liability provisions to subcontractors, including domestic carriers. (Order of November 21, 2007, at 1-4).

Accordingly, it is clear to the Court that the Circuit

9

Court's ruling precludes any argument that Carmack does not apply to this action. As the Circuit Court unambiguously ruled:

> ...[W]e have determined that Carmack applies to the domestic rail portion of an international shipment originating in a foreign country and traveling under a through bill of lading, even where the parties have extended COGSA's liability provisions to domestic rail carriers..."

Sompo II, 456 F.3d at 75. Because the Court has already determined that the background of this case precisely mirrors these circumstances, Defendant cannot now contest the applicability of Carmack. See also, Sompo Japan Insurance Company v. Union Pacific R. Co., 2007 WL 2230091, *4 (S.D.N.Y. 2007) (finding, on facts analogous to the case at bar, that the Second Circuit ruling in Sompo II is detminative and precludes any argument that Carmack does not govern).

C. Compliance with Carmack

In Sompo II, the Court remanded the action to the District Court for consideration of arguments that Defendant complied with the requirements of Carmack and Staggers. Sompo II citation. Because Carmack applies in this action, on summary judgment this Court must determine likewise whether Defendant complied with Carmack in the instant case. The issue of compliance with Carmack was originally briefed in the parties' moving papers but, having concluded that Carmack was inapplicable, the Court

10

declined to consider the parties' arguments. The Court considers these arguments now.

Aside from its argument that the K-Line B/L satisfied Carmack because it offered alternate rates under COGSA, Defendant Sompo offers two reasons why it complied with Carmack. First Defendant argues that the shipper could have requested full value Carmack liability in the K-Line B/L. (Def. Mem. Law at 6). Second, Defendant argues that it complied with Carmack because the UP Exempt Circular 20-B offered alternate rates for full liability under item 143-B. (Def. Mem. Law at 5).

The Court turns to UP's argument that Clause 4 of the B/L complied with Carmack. According to UP, the shipper had an opportunity to avoid the $500.00 per package limitation because clause 4 of the B/L states, in relevant part, that if COGSA applies, the carrier will not be liable for damage in an amount exceeding $500.00 per package, "unless the nature and value of such goods have been declared by the shipper before receipt of such goods and inserted in this bill of lading." (Def. Mem. Of Law at 5; Sheldon Aff. Ex. A). Defendant essentially argues that if the shipper wanted full value liability under Carmack, the B/L put the shipper on notice that all it had to do was ask.

Well-settled law and the Circuit Court's ruling in Sompo II

11

09/26/2007 16:33   9831229   GUTTERMAN ASSOCIATES   PAGE 13

foreclose this argument. It is established that the burden to offer full Carmack liability is on the rail carrier. See <u>Tokio Marine and Fire Ins. Co., Ltd, v. Amato Motors, Inc.</u>, 996 F.2d 874, 879 (7th Cir. 1993) ("rail carriers still must offer full value rates"). Moreover, the Court in <u>Sompo II</u> found that bills of lading which offer full coverage under COGSA alone cannot satisfy the Staggers Act.

As the Second Circuit explains, COGSA and Carmack respectively rely on negligence and strict liability regimes. <u>Sompo II</u>, 456 at 76. A bill of lading which offers alternative terms solely under COGSA does not comply with Carmack: "[T]he Court cannot assume a shipper was properly given the opportunity to choose among types of liability coverage and chose not to pay higher rates for full coverage under a strict liability regime." <u>Id</u>. As the Second Circuit makes clear, "[r]ail carriers that wish to limit their liability must offer the shipper the option of full Carmack coverage, which includes both the Carmack version of strict liability and full coverage for loss." <u>Sompo II</u>, 456 at 60.

For purposes of assessing whether clause 4 of the K-line B/L offered full Carmack coverage, its language cannot be relevantly distinguished from the B/L at issue in <u>Sompo II</u>. There, the

operable B/L provided that, if COGSA applies, neither the carrier nor the vessel will not be liable for damage in an amount exceeding $500.00 per package, "unless the value of the Goods has been declared and inserted in the declared value box on the face hereof." Id. The K-line B/L in the instant case likewise failed to make mention of the Carmack Amendment's actual full liability terms, and they are never offered as an option for the shipper to choose. Accordingly, Defendant cannot maintain that the K-Line B/L complied with Carmack under the terms of Clause 4.

Defendant's second argument, that UP offered full Carmack coverage under the UP Exempt Circular 20-B, also fails as a matter of law. Defendant argues that Circular 20-B offered alternate rates for full Carmack liability under Item 143-B.[2] (Def. Mem. Law at 5). Section 27 of the Exempt Rail Transport Agreement entered into by Rail Bridge and UP provides that "Liability for freight loss and damage to lading while under the control of UP shall be governed by applicable rules circulars." Defendant maintains that the applicable rules circular here was Circular 20-B, which in turn offered Carmack liability under Item

---

[2] UP also argues that because Item 142-B(3)(L) of the Circular recognizes that the shipper may opt for alternative liability rates, it is further evidence of compliance with Carmack. (Def. Mem. Law at 3). However these terms merely refer the shipper to the K-Line B/L, which as described herein, cannot alone satisfy the requirements of Carmack and the Staggers Amendment.

13

143-B. Id. Plaintiffs dispute whether the Exempt Rail Transport Agreement and Circular 20-B are binding on Plaintiff Olympus, the shipper. (Pl. Mem. Law at 13). Plaintiffs further disputes whether the shipper was properly on notice of either of these documents, compellingly arguing that Defendant relies on too many incorporation by reference steps to properly charge the shipper with notice. (Pls.' Mem. Law at 18).

However, even if Plaintiff Olympus were on notice of the Exempt Rail Transport Agreement and Circular 20-B, and these agreements were binding upon the shipper, the Court cannot find that the Circular offered full Carmack liability for this international intermodal shipment. The Circular includes only one term which recognizes a shipper's option to chose full Carmack liability, Item 142-B(1)(C); that term clearly limits the availability of this option to "domestic moves that originate in the United States." (Sheldon Aff. Ex. E). Accordingly, even assuming that the shipper was on notice of the terms of the Exempt Rail Transport Agreement and Circular 20-B, Defendant failed to offer Plaintiff Olympus full Carmack liability for their international shipment. See also, Sompo Japan Insurance Company v. Union Pacific R. Co., 2007 WL 2230091, *5 (S.D.N.Y. 2007) (considering the same Rules Circular language and finding that it limited the offer of Carmack liability to domestic

14

shipments).

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's partial motion for summary judgment seeking to limit Defendant's liability for stolen goods to $500.00 per package.

Liability in this action is not contested and the parties have stipulated to actual damages. Accordingly, the Clerk of Court is hereby directed to enter judgment in the amount of $422,245.02, plus prejudgment interest at the rate of 9% from November 29, 2001 until the date of entry of this judgment, in favor of Plaintiffs and against Defendant.

The Clerk of Court is also directed to close this case.

SO ORDERED.

Dated: New York, New York
September 26, 2007

_Deborah A. Batts_
Deborah A. Batts
United States District Judge

15